[L. A. No. 4586. Department Two.—November 23, 1918.]

E. M. ABBOTT, Respondent, v. JAMES ARP, Appellant.

MALICIOUS PROSECUTION—PROBABLE CAUSE—INSTRUCTIONS.—In this action for damages for malicious prosecution it is held that the instructions of the trial court to the jury on the subject of probable cause for the prosecution were erroneous and misleading, requiring a reversal of the judgment.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Kaye & Siemon, for Appellant.

J. W. Wiley, for Respondent.

MELVIN, J.—Defendant appeals from a judgment and an order denying his motion for a new trial.

The action was one by which plaintiff sought damages for malicious prosecution. The issues of fact were tried by a jury and a verdict was returned in favor of plaintiff for five hundred dollars. Judgment was entered accordingly.

The evidence showed that on the twenty-seventh day of January, 1913, defendant James Arp swore to a complaint in the justice's court of the sixth township, county of Kern, charging that E. M. Abbott, on or about the twenty-seventh day of November, 1912, did unlawfully convert and embezzle a certain wagon, the property of Arp, of the value of $15, with which property Abbott had been intrusted as bailee. Abbott was arrested upon the charge and imprisoned for several days. When the criminal case came on for trial it was dismissed on motion of the district attorney.

The plaintiff Abbott did not testify at the trial of the civil action, but Arp gave testimony, both for the plaintiff and on his own behalf. He testified that he loaned Abbott a spring wagon in June or July of 1912. In September, Arp met Abbott and asked for the return of the vehicle. Abbott replied that he had left it at the ranch of a man named Brinkman, and promised either to bring the wagon to Arp or have Brinkman deliver it. Later, and after Abbott's departure from Kern County, Arp called up Mrs. Brinkman on the telephone, asked if Abbott had left a wagon at her place and received an affirmative reply. On the following day she notified him that, upon consultation with her husband, she had learned that Abbott had sold the wagon left by him at the Brinkman ranch to a man named Green. Later, on the advice of a peace officer, Arp went to the district attorney's office, stated the foregoing facts to one of the deputies and obtained a complaint charging Abbott with embezzlement. Defendant also testified that he did not see the wagon at Green's place until after the issuance of the warrant and just before the trial. Mrs. Green, he said, pointed out to him the wagon which had been purchased from Abbott and he then discovered that it was not the one which he had owned.

The deputy district attorney who drew the complaint on the criminal charge had no remembrance of the details of the conversation with Arp which induced him to act in the matter.

Mrs. Brinkman corroborated the defendant with reference to the conversations which she had with him by telephone.

While there was evidence from which plaintiff seeks to draw the conclusion that Arp did not own the wagon loaned to the plaintiff, we do not think it justifies that theory. E. M. Roberts testified that he left the old vehicle on the ranch which he sold to Arp and that "Mr. Arp could have it if he wanted it." Evidently, Arp did appropriate and use the wagon, and as Roberts had abandoned all claim to it, there can be no doubt that defendant considered it his property.

One Goble, who was present when the conversation was in progress between Abbott and Arp with reference to the wagon, testified that the latter said: "You can have the wagon; go out and get it." Upon this testimony plaintiff bases his claim that, as defendant had made a gift of the property to plaintiff, the subsequent prosecution for embezzlement must have been inspired by malice. It is important to remember, however, that Goble was not present throughout the conversation, and that the plaintiff did not contradict defendant's testimony with reference to his subsequent promise to return the property. Such a promise would, of course, be totally inconsistent with the conclusion that Arp had made Abbott a present of the wagon.

Respondent also insists that defendant knew when he swore to the complaint that the wagon sold by Abbott to Green was not the one loaned by Arp. Mrs. Green and her sister told of his visit to the Green place "on or about the 27th of January, 1913," when he was shown a wagon bought by Green from Abbott and exclaimed: "That is not my wagon." But they could not definitely fix the day. Mr. Green gave the time of the visit as "somewhere near a week" before they moved, fixing the latter date as February 2, 1913. In one part of his testimony Arp stated that he saw a woman whom he supposed to be Mrs. Green at the home of the Greens prior to the time when he swore to the complaint, but he stoutly asserted that she did not show him the wagon and he did not discover it was not his property until after the complaint against Abbott had been filed. It is argued that since Mrs. Green and her sister told of but one conversation and one meeting during which defendant discovered that the wagon in her husband's possession was not the one Abbott had borrowed from Arp, therefore, the latter must have known, when he swore to the complaint, that he was verifying

a false statement. The record is rather obscure on this point, but assuming that Arp's discovery regarding the wagon at Green's place antedated the complaint, it does not follow, by any means, that want of probable cause was thereby established. Even if he did discover before causing Abbott's arrest that the wagon transferred from the Brinkman place to that of the Greens was not the one which had been loaned to Abbott, the undisputed facts remain that plaintiff had borrowed defendant's wagon; had kept it for more than half a year; had frequently promised to return it; and had departed for Long Beach without doing so, stating that it had been left with Mr. Brinkman. Added to these facts are the undenied statements that defendant had been told by Mrs. Brinkman that his wagon had been sold by Abbott to Mr. Green. The mere discovery that Green had purchased a wagon from Abbott which was not defendant's, would not necessarily demonstrate that the loaned wagon had not been appropriated by the borrower. Yet the court instructed the jury that there would be "no probable cause for prosecution" if the jurors should find "that at time the defendant Arp made inquiry at residence of Green, he was shown and saw the wagon sold by Abbott to Green, and then knew and stated that it was not the wagon he had loaned to Abbott, and that these facts were all known to defendant Arp before he commenced the prosecution against Abbott." This instruction was clearly erroneous.

The court gave, among others, the following instruction:

"Evidence has been introduced to show the following facts:

"1. That the defendant Arp did not loan the wagon to plaintiff, Abbott, but gave it to him without consideration with the statement to the effect that he, Arp, had no further use for it.

"2. That after Arp had demanded the return of the wagon from Abbott, that Abbott informed the defendant Arp that said wagon was at Ben Lamb's or Brinkman's place in the Weed Patch and that he would return it.

"3. That after Arp had been informed that Abbott had sold the wagon to one Green, he before commencing the criminal complaint against Abbott knew that said wagon, which had been sold by Abbott to Green, was not the property of Arp.

"If you find that the above statements are established by a preponderance of the evidence, you are instructed that there was a want of probable cause."

The instruction is one which would be misleading to any jury. The jury was told that one of the things establishing want of probable cause was Abbott's promise to return the wagon. On the contrary, such promise, if unfulfilled and followed by the departure of Abbott, would be one of the strong elements of probable cause if Arp had good reason honestly to believe that the wagon had been sold by the borrower. By the instruction the jurors were told that they could believe two utterly inconsistent propositions—one that Abbott had received the wagon as a gift and the other that he had promised to return it to the donor still claiming ownership. The giving of such an instruction was clearly error requiring this court to reverse the judgment and order. Our conclusion upon this branch of the case makes it unnecessary to examine the other alleged errors.

The judgment and order are reversed.

Wilbur, J., and Lorigan, J., concurred.